UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARRELL MEYER,  
    Plaintiff,

Case No. 1:12-cv-873  
Barrett, J.  
Litkovitz, M.J.

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

REPORT AND  
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11) and the Commissioner's response in opposition (Doc. 19).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in May of 2008, alleging disability since February 15, 2008, due to lymphoma cancer in remission, diabetes, brain problems, and a cavernoma on the brain. (Tr. 98-99). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Paul E. Yerian. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 11, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act from February 15, 2008, the date he claims he became disabled, through December 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since February 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: diabetes mellitus without end-organ changes; hypertension; substance abuse - currently in remission; mood disorder; hepatitis C; status post remote amnestic state secondary to drug use; status post lymphoma without evidence of recurrence; and caveronoma [sic][1] (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, and he can only occasionally climb stairs. He can only do simple repetitive tasks and some moderately moderate [sic] complex tasks, and he can have no more than occasional changes in routine. He should have no more than brief and superficial contact with others, and he can only maintain attention and concentration for two hour time periods. He should not work in environments with rapid pace or strict time and production standards.

---

[1] A "cavernoma" is a "cavernous vascular tumor." http://medical-dictionary.thefreedictionary.com/cavernoma.

3

6. The [plaintiff] cannot perform his past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1958 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963). He is currently an individual closely approaching advanced age, having attained age 50 in July 2008.

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from February 15, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-32).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

---

[2] Plaintiff's past relevant work was as a plumber, HVAC installer/helper, and butcher, all of which was skilled work which he performed at the heavy exertional level. (Tr. 30).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform at least 8,100 jobs in the local economy and more than 1,000,000 jobs in the national economy, including representative unskilled light occupations such as sewer/wrapper, with 3,200 jobs in the regional economy, 15,800 jobs in the state economy, and 521,100 jobs in the national economy; and tie binder, with 4,900 jobs in the regional economy, 28,000 jobs in the state economy, and 499,800 jobs in the national economy. (Tr. 31, 1071-1072).

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The medical findings and opinions of record have been adequately summarized in the ALJ's decision and will not be repeated here. (Tr. 22-30). Where applicable, the Court will identify the medical evidence relevant to its decision.

5

On appeal, plaintiff presents two assignments of error: (1) the ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating psychologist; and (2) the ALJ erred by finding that plaintiff did not suffer from bilateral neuropathy of the feet.

**1. The ALJ's failure to follow the agency's procedural regulations and give controlling weight to the opinion of plaintiff's treating psychologist was harmless error.**

It is well-established that the findings and opinions of treating providers are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what

weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole,* 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[4]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Plaintiff contends that the ALJ failed to comply with applicable Social Security regulations and case law when he did not give "controlling weight" to the assessment of plaintiff's treating psychologist, Dr. Jonathan Steinberg. (Doc. 11 at 2-7). Plaintiff asserts that the ALJ did not clarify why he declined to give controlling weight to Dr. Steinberg's opinion, which plaintiff contends was consistent with the other medical evidence of record. Plaintiff also contends that while the ALJ decided to give Dr. Steinberg's opinion "reduced weight" on the ground the frequency and duration of his interactions with plaintiff were unclear from the record (*Id.* at 3, citing Tr. 30), the record in fact establishes the nature and extent of the treatment

---

[4] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

relationship and the frequency of the treatment sessions. Plaintiff states that the medical records identified Dr. Steinberg as plaintiff's treating mental health provider beginning in December 2009; the records show that Dr. Steinberg met with plaintiff monthly over a period of several months in 2010; and Dr. Steinberg supervised group therapy sessions in which plaintiff actively participated over a period of seven months.

In his decision, the ALJ gave "less weight" to Dr. Steinberg's mental RFC assessment dated February 16, 2011 (Tr. 927-29). (Tr. 30). The ALJ noted that according to Dr. Steinberg, plaintiff had some difficulty sustaining attention and concentration and maintaining relationships with co-workers, and plaintiff had no more than moderate limitations in 9 of the 20 areas Dr. Steinberg assessed. (*Id.*, citing Tr. 927-29). The ALJ decided to give Dr. Steinberg's opinion only "some weight" to the extent the assessment was consistent with the ALJ's RFC finding, finding only that the "frequency or duration" of Dr. Steinberg's interaction with plaintiff was unclear. (*Id.*).

As an initial matter, it is not clear from the ALJ's decision whether the ALJ considered Dr. Steinberg to be a "treating" provider. However, the Commissioner does not dispute, and the record clearly shows, that Dr. Steinberg was a "treating" provider as defined under the regulations. *See* 20 C.F.R. §§ 404.1502, 416.902 (a treating provider is a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."). The record shows that Dr. Steinberg saw plaintiff regularly beginning as early as February 2010, leading group therapy sessions in which plaintiff participated (Tr. 758- 2/10; Tr. 675- 5/10; Tr. 660- 6/10), and conducting individual

8

therapy sessions with plaintiff once a month between April and October 2010 (Tr. 534, 541, 555, 574, 583, 668, 671, 718). Plaintiff testified at the April 2011 ALJ hearing that he continued to see Dr. Steinberg once or twice a month until approximately two months before the hearing. (Tr. (Tr. 1060). Thus, based on the evidence showing that Dr. Steinberg regularly treated plaintiff over a sustained period of time, the ALJ was required to weigh Dr. Steinberg's opinion in accordance with the rules and regulations applicable to a treating provider.

The ALJ did not comply with 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) when determining the weight to give Dr. Steinberg's mental RFC assessment. The ALJ did not consider (1) whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) whether the opinion was "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). Nor did the ALJ give "good reasons" for the weight actually assigned. The ALJ did not consider any of the other regulatory factors to be balanced in determining what weight to afford the opinion of a treating provider when the ALJ declines to give the opinion controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

Nonetheless, the ALJ's failure to follow the regulations when weighing Dr. Steinberg's opinion does not warrant reversal of the decision to deny benefits under the unique circumstances of this case. A violation of the "good reasons rule" can be deemed to be harmless error if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § [1527(c)(2)] . . . even though he has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (citing

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547)). Here, the third condition is met in that the ALJ made findings consistent with the mental limitations Dr. Steinberg assessed in the mental RFC assessment he completed.

Dr. Steinberg assessed plaintiff's degree of mental limitation in 20 areas by assigning one of five degrees of limitation: (1) "Not Significantly Limited"; (2) "Moderately Limited"; (3) "Markedly Limited"; (4) No Evidence of Limitation in this Category"; and (5) "Nor Ratable on Available Evidence." (Tr. 927-28). Dr. Steinberg assessed plaintiff as "Not Significantly Limited" in 11 areas and assessed plaintiff's abilities in the following nine areas as "Moderately Limited": remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). In the portion of the assessment designated for elaborating on his conclusions, Dr. Steinberg wrote one sentence: "[Plaintiff] has some problems with sustained attention [and] concentration, and maintaining relationships with co-workers." (Tr. 929).

The ALJ accounted for the moderate limitations Dr. Steinberg assessed by imposing the following mental limitations in the RFC finding:

> [Plaintiff] can only do simple repetitive tasks and some moderately moderate [sic] complex tasks, and he can have no more than occasional changes in routine. He should have no more than brief and superficial contact with others, and he can

10

> only maintain attention and concentration for two hour time periods. He should not work in environments with rapid pace or strict time and production standards.

(Tr. 26). Plaintiff has not shown how the ALJ's RFC finding is inconsistent with Dr. Steinberg's opinion, which imposed only moderate limitations.

Moreover, both Dr. Steinberg's assessment and the ALJ's RFC finding are largely consistent with the mental limitations assessed by the examining and reviewing mental health sources of record, each of whom assessed moderate limitations in maintaining sustained attention and concentration or relationships with co-workers. State agency reviewing psychologist Dr. J. Pressner, Ph.D., completed a Psychiatric Review Technique and Mental RFC Assessment in June 2005, finding plaintiff had moderate restriction of activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 335-52). Dr. Pressner concluded that plaintiff retained the ability to perform simple, repetitive tasks on a sustained basis without special consideration. (Tr. 351). Consultative examining psychologist Dr. Norman L. Berg, Ph.D., interviewed plaintiff and administered psychological tests in June 2009. (Tr. 369-80). Dr. Berg concluded that plaintiff would have moderate limitations in his ability to cope with routine job stress. (Tr. 378). State agency reviewing psychologist Dr. Bonnie Katz, Ph.D., completed a Psychiatric Review Technique and Mental RFC assessment that same month (Tr. 389-406), finding that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 399). Dr. Katz concluded that plaintiff can understand, remember and carry out simple and somewhat complex tasks; he can make simple decisions; he can relate to coworkers, supervisors and the public on a superficial basis; he can deal with occasional changes in routine; and he would require a calm, consistent setting with clear performance expectations and no fast-paced production demands. (Tr. 405).

11

In addition to fashioning an RFC consistent with the assessment of Dr. Steinberg and the other mental health sources of record, the ALJ elicited vocational testimony which substantially supports his finding that plaintiff is able to perform a significant number of jobs given the moderate limitations assessed by Dr. Steinberg. Plaintiff states that the VE testified that if Dr. Steinberg's assessment were accepted as accurate, then plaintiff would be precluded from performing all work. (Doc. 11 at 3, citing Tr. 1073). However, this is not an accurate characterization of the VE's testimony. The ALJ included the moderate mental limitations assessed by Dr. Steinberg and the other mental health sources of record in the first hypothetical propounded to the VE. (Tr. 1070-71). The VE responded that the hypothetical individual with those physical and mental limitations could perform over 1,000,000 jobs in the national economy, over 43,000 jobs in the State of Ohio, and over 8,000 jobs regionally. (Tr. 1070-72). The ALJ then asked the VE to: (1) assume that plaintiff could perform light work with some climbing restrictions, and (2) assume for purposes of the hypothetical that the term "moderate" as used by Dr. Steinberg meant "seriously limited but not precluded," given that the term was neither explained by Dr. Steinberg nor defined anywhere on the mental assessment form he completed. (Tr. 1073-74). The VE responded that plaintiff would be unable to perform the jobs jobs the VE had identified because serious limitations in social interaction, and in the ability to remember locations and work-like procedures, would foreclose those jobs. (Tr. 1074). However, the hypothetical was not an accurate characterization of Dr. Steinberg's assessment because Dr. Steinberg gave no indication that plaintiff was "seriously limited" in any area of mental functioning. Instead, Dr. Steinberg indicated in his mental RFC assessment that plaintiff's mental limitations were "moderate," and he alluded to only "*some* problems with

sustained attention [and] concentration, and maintaining relationships with co-workers." (Tr. 929) (emphasis added). Nowhere in his assessment or treatment notes did Dr. Steinberg describe describe serious mental limitations which the ALJ failed to take into account when eliciting testimony from the VE and fashioning the RFC.

Accordingly, although the ALJ did not comply with the regulations by setting forth his reasons for declining to give controlling weight to plaintiff's treating psychologist, Dr. Steinberg, and by failing to give "good reasons" for the weight given the opinion, the error was harmless. *See Cole*, 661 F.3d at 940. The ALJ formulated an RFC consistent with Dr. Steinberg's opinion of moderate mental limitations and elicited vocational testimony which substantially supports the ALJ's finding that plaintiff is capable of performing a significant number of jobs given his moderate mental limitations. The first assignment of error should be overruled.

**2. The ALJ did not err by finding that plaintiff does not suffer from bilateral neuropathy of the feet.**

Plaintiff alleges as his second assignment of error that the ALJ erred by finding that he does not suffer from bilateral neuropathy of the feet. (Doc. 11 at 7-9).

The ALJ determined based on his review of the record that there was no medical evidence that plaintiff suffered from neuropathy of the lower extremities. The ALJ stated that although the the record was left open following the ALJ hearing to allow plaintiff to submit an EMG report to substantiate his complaints of lower extremity neuropathy, the records plaintiff had submitted, and which the ALJ considered, did not include EMG results. (Tr. 20, citing Tr. 934-1038). The ALJ also considered plaintiff's complaints of neuropathy in conjunction with the Listings and found there was no evidence of neuropathy so as to satisfy Listing 9.08, which required plaintiff

13

to establish diabetes mellitus with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C). . . .[5] Appendix 1 to Subpart P of Pt. 404 (2011). (Tr. 24-25). Further, the ALJ acknowledged that plaintiff claimed he was disabled primarily due to diabetes and resulting neuropathy which purportedly limited him to standing two hours out of an eight-hour workday (Tr. 27), but the ALJ found no reference in the record to recurrent diabetic ulcerations in the lower extremities that would interfere with plaintiff's functioning; plaintiff was prescribed medication that resolved foot lesions; and plaintiff's neurological examinations were normal. (Tr. 28). Plaintiff has not shown these findings by the ALJ are unsupported by the record and that the ALJ improperly discounted his complaints of foot pain, numbness and tingling made at the ALJ hearing.

To substantiate his complaints of debilitating foot symptoms, plaintiff relies on the February 2011 evaluation of occupational therapist James Bishop. (Tr. 974-77). Mr. Bishop's report notes that plaintiff stated he could sit for three to four hours per day, and the report includes an observation that plaintiff sat in the clinic for 30 minutes without distress. (Tr. 977). Plaintiff's gait appeared normal and his walking speed was only minimally reduced. (*Id.*). Plaintiff walked 300 feet without pain or signs of discomfort. (*Id.*). Based on what he "believe[d]" plaintiff's abilities to be, Mr. Bishop recommended that in an 8-hour day plaintiff could sit for three to four hours but not continuously; stand for two to three hours but not

---

[5] Section 11.00C in turn provided: "Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms."

continuously; lift no more than 50 pounds to the waist occasionally and no more than 25 pounds overhead occasionally; and walk for more than one to two miles. (Tr. 978). Mr. Bishop cautioned: "These recommendations are based upon a brief, one-time evaluation; they may or may not represent the [patient's] true level of function[.] However, they are believed by this therapist to be accurate." (*Id.*). Mr. Bishop did not report a foot impairment, and although the ALJ gave Mr. Bishop's report some weight, the ALJ reasonably discounted the report to the extent it was based on plaintiff's self-reported limitations. (Tr. 29). *See* 20 C.F.R. §§ 404.1529, 404.1529, 416.929) (statements about your pain or other symptoms alone will not establish that you are disabled). *See also McCormick v. Secretary*, 861 F.2d 998, 1001-02 (6th Cir. 1988) (subjective evidence cannot alone support a finding of disability).

Similarly, the walking limitation included in the August 2005 report prepared by one-time examining physician Dr. Mahmoud Yassin-Kassab, M.D., Indiana Department of Family and Social Services, does not substantiate plaintiff's complaints of a debilitating foot impairment. (Tr. 355-358). Dr. Yassin-Kassab concluded that plaintiff could stand or walk at least two hours in an eight-hour day without any assistive devices despite "his impairment." (Tr. 358). However, Dr. Yassin-Kassab did not diagnose a foot impairment or report any foot symptoms. Rather, plaintiff's chief complaints as of the date of the report were lymphoma cancer, diabetes, and a brain problem, and the only physical symptom plaintiff reported was dizziness. (Tr. 355). Plaintiff denied weakness or numbness in the lower extremities and reported he could walk at least one block and climb one flight of stairs without a problem. (*Id.*). No abnormalities of the extremities were noted. Plaintiff had a normal gait and station and was able to walk and stand on

15

on heels and toes without difficulty. (Tr. 357). Dr. Yassin-Kassab concluded that plaintiff's physical exam "was absolutely normal" on the date of his examination. (Tr. 358).

The remaining medical records plaintiff cites reference only one complaint of numbness and tingling (Tr. 497- 4/10) and do not include objective test results which substantiate plaintiff's complaints of a debilitating foot impairment. (Doc. 11 at 8, citing Tr. 410, 497, 500, 512, 840). Plaintiff was treated for cellulitis of the right foot in January 2008 after he failed to take his medications as directed, but he was discharged from the hospital in good condition and there is no indication of continuing symptoms or complications. (Tr. 409-11). Plaintiff was prescribed a cane in September 2009 for foot pain resulting from a "left foot injury" (Tr. 513), but there is no mention in the records from that date of neuropathy or chronic foot pain. (Tr. 510-13). Plaintiff was treated for recurring small foot blisters in November 2009 (Tr. 500), but the record indicates those blisters were successfully treated by a dermatologist. (Tr. 497). These records do not constitute objective evidence of bilateral foot neuropathy or any other functionally limiting foot condition of a chronic nature.

Finally, the ALJ did not err by discounting plaintiff's complaints, specifically as they relate to a foot impairment, based on plaintiff's work history and statements about his work experience and attempts which were inconsistent with testimony plaintiff gave at the ALJ hearing. (*See* Tr. 28, 29). The mental health records include numerous notations which indicate indicate that during the period of alleged disability, plaintiff was willing to return to work, he had made numerous attempts to return to work, and he had engaged in work activities indicative of an ability to perform light work. (*See* Tr. 857- plaintiff indicated in 11/09 that he would be willing to drop his disability claim in order to obtain more drug treatment and return to work; Tr. 832-

plaintiff indicated in 12/09 that he was interested in returning to Goodwill and the work force eventually; Tr. 624- plaintiff reported in 6/10 that he had made "many attempts" to get a job and "everyone says no," and he verbalized a desire to take computer classes to improve his job prospects; Tr. 584- plaintiff reported that he had a plumbing job in an apartment; Tr. 541-42- in 9/10, a plan was formulated to refer plaintiff to the CWT (Compensated Work Therapy) Program[6] to begin to secure income and help prepare him to return to competitive employment, and the counselor reported that, "[Plaintiff] has been oriented into the CWT Program. [Plaintiff] reports that he fully understands and will comply with all program requirements. [Plaintiff] also states he has no major medical problems or concerns which would limit or restrict his ability to participate in the CWT program."; Tr. 541- plaintiff reported in 9/10 that he was taking computer classes in the morning and working the third shift cleaning at the Veterans Administration as part of the CWT Program; Tr. 996- plaintiff reported in 1/11 that his goal was to secure full-time employment in his chosen field as a plumber, pipefitter, or maintenance worker; counselor's notes state that plaintiff "remain[ed] on the Employment Track and still hope[d] to be able to secure [full-time] employment by his [discharge] date from the CWT Program," plaintiff had been working on a full-time third-shift CWT assignment for the preceding three months and had "been doing very well," and the plan was for plaintiff to continue on his full-time assignment and to be more active in his job search with the assistance of Ohio One Stop Employment Representatives, with vocational assistance and follow-up to be provided until he secured employment or was discharged from the CWT Program). These statements and plaintiff's work

---

[6] The United States Department of Veterans Affairs website describes "Compensated Work Therapy" as "a Department of Veterans Affairs (VA) vocational rehabilitation program that endeavors to match and support work ready veterans in competitive jobs, and to consult with business and industry regarding their specific employment needs." http://www.va.gov/health/cwt/.

history belie plaintiff's allegations that he suffered from bilateral neuropathy of the feet and other debilitating foot symptoms. The Court must therefore defer to the ALJ's decision to discount plaintiff's complaints as not fully credible. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 755 (6th Cir. 2012) (credibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are to be afforded great weight and deference, particularly since an ALJ is charged with the duty of observing a claimant's demeanor) (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Walters*, 127 F.3d at 531).

For these reasons, the ALJ's finding that plaintiff did not suffer from severe bilateral neuropathy of the feet and decision to discount plaintiff's complaints of foot pain, numbness and tingling are supported by substantial evidence. The second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 1/16/2014

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARRELL MEYER,
    Plaintiff,

Case No. 1:12-cv-873
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).